UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | Chapter 7 |
| | : | |
| WILLIAM C. YOUNG, | : | |
| | : | Bankruptcy No. 16-11395-AMC |
| DEBTOR | : | |
| | : | |
| LYDIA HAMPTON, | : | |
| | : | |
| PLAINTIFF | : | |
| | : | Adv. Proc. No. 16-00190-AMC |
| V. | : | |
| | : | |
| WILLIAM C. YOUNG, | : | |
| | : | |
| DEFENDANT. | : | |

Ashely M. Chan, United States Bankruptcy Judge

OPINION

I.  INTRODUCTION

At the time that William C. Young ("Debtor") filed this bankruptcy proceeding, he was owed a tax refund from the City of Philadelphia which he properly listed on his schedules. However, his attorney failed to advise him that, upon receipt of the refund, the Debtor was required to turn over the refund proceeds to the Chapter 7 trustee. His attorney also failed to thoroughly review the schedules with the Debtor and, as a result, the Debtor omitted two small prepetition loans that he owed to his friends.

After the Debtor filed this proceeding, the Debtor received the refund and used some of the proceeds to pay off the two loans and to make certain purchases. At the meeting of creditors, the Debtor initially testified that his schedules were accurate but, upon direct questioning about the refund, he immediately disclosed that he had received the refund and spent part of it. Based upon

1

the Debtor's consistent, credible testimony given during the meeting of creditors and at trial, it is clear that the Debtor, an elderly gentleman, did not realize that any of his statements in this proceeding were false and did not take any action during this proceeding with the intent to deceive his creditors or the Chapter 7 Trustee. Accordingly, the Debtor is entitled to receive a full discharge of his obligations.

## II.    FACTS AND PROCEDURAL HISTORY

On February 13, 2015, the plaintiff in this adversary proceeding, Lydia Hampton ("Hampton"), obtained a default judgment against the Debtor in state court related to injuries that she allegedly sustained on the Debtor's premises. Compl. ¶ 13; Ex. P-5 attachment to Part 4, Item 9. Before the amount of damages could be assessed, on February 29, 2016, the Debtor filed for bankruptcy under Chapter 7. *Id.* at ¶¶ 14, 4.

On March 28, 2016, the Debtor filed his Schedules of Assets and Liabilities ("Schedules") and Statement of Financial Affairs ("SOFA") and averred, under penalty of perjury, that such documents were true and correct to the best of his knowledge, information, and belief. Compl. ¶11; Ex. P-4, 5. On Schedule B, the Debtor listed a tax refund of $92,940.83 ("Refund") owed to him by the City of Philadelphia ("City") related to a prepetition tax foreclosure sale of commercial property located at 5224-26 Woodland Avenue. Ex. P-4. On schedule F, the Debtor listed Hampton as his only creditor with an unsecured, nonpriority claim in the amount of $50,000. *Id.* He listed no other creditors on his schedules. *Id.*

On April 5, 2016, the Debtor received the Refund in the amount of $92,640.83. Ex. P-9. On April 8, 2016, he opened a new checking account and savings account with TD Bank ("Accounts") and deposited $45,000.00 of the Refund into the checking account and $46,140.83 in the savings account. *Id.* The Debtor subsequently spent approximately $20,000 to $30,000 of

the Refund: (i) to repay: (A) a loan of $1,100.00 to his friend, Sherman White ("White"), (B) a loan of $2,500.00 to another friend, Charles Major ("Major") and (C) a loan of $7,000 against his life insurance policy with the Veterans' Administration, which he had disclosed on his Schedules; (ii) on jewelry for his girlfriend; and (iii) on parts for his car (collectively, the "Transfers"). Ex. P-4, 8A at 5:30-9:00, 20:00-22:00, 9.[1]

On June 8, 2016, the Debtor and his counsel, as well as counsel for Hampton, attended the Section 341 meeting of creditors ("Meeting") held by the Chapter 7 Trustee ("Trustee"). Compl. ¶ 21; Ex. P-7A. At the outset of the Meeting, the Trustee asked the Debtor if his Schedules contained any errors or omissions, to which he replied "no." Ex. P-7A at 1:30. The Trustee also asked the Debtor if he had listed all of his assets and creditors on his Schedules, to which he replied "yes." *Id.* at 1:00. At the conclusion of the Trustee's questioning, Hampton's counsel asked the Debtor if he knew when he would receive the Refund. *Id.* at 13:00. Without hesitating, the Debtor responded that he had received the Refund about a month prior to the Meeting. *Id.* He testified that he did not realize that he was not supposed to spend the Refund. *Id.* at 30:00.

The Debtor also disclosed during the Meeting that he had used part of the Refund to pay back White and Major for lending him money in the past. Ex. P-7A at 18:00, 31:00. Throughout the Meeting, the Debtor appeared to have difficulty understanding and answering questions, recalling accurate timelines, and seemed generally confused. The Trustee continued the Meeting until July 6, 2016. ECF Doc. 23; Ex. P-8A.

On June 10, 2016, Hampton filed a complaint in this adversary proceeding seeking entry of an order denying the Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(2) and 727(a)(4) based

---

[1] Exhibit P-9 includes a TD Bank statement detailing every transaction in the Debtor's checking account including copies of checks. These documents account for how the Debtor spent most, but not all, of the Refund deposited in the Accounts. Ex. P-8A at 6:00.

upon, *inter alia*, the Debtor's fraudulent actions in making the Transfers and failing to disclose receipt of the Refund, the Accounts and the loans from White and Major ("Loans"). ECF Doc. 1; Compl. ¶¶ 37-42.

On June 13, 2016, the Debtor's counsel sent the Trustee copies of bank statements and other records from TD Bank reflecting how the Debtor had spent part of the Refund. Ex. P-9. On July 6, 2016, the Trustee met with the parties again for the continued Meeting. ECF Doc. 23; Ex. P-8A. Remarkably, Debtor's counsel claimed during the Meeting that the Debtor had never told him that he was entitled to receive the Refund even though Debtor's counsel had specifically listed it on Schedule B. Ex. P-4, 8A at 3:00.

By the time the Trustee held the continued Meeting, TD Bank had frozen the Accounts and turned over the remainder of the Refund to the Trustee. Ex. P-8A at 5:30. The Trustee's final report reflects that the Trustee distributed $57,243.88 of the Refund to Hampton and $6,646.43 in fees to the Trustee. ECF Doc. 52.

At trial, Debtor's counsel initially argued that, at the time of the Debtor's filing, Debtor's counsel did not realize that the Debtor was entitled to receive the Refund. When Hampton's counsel showed Debtor's counsel a copy of the filed Schedule B, Debtor's counsel accused Hampton's counsel of tampering with Schedule B to falsely reflect the Refund. When the Court pointed out that the docket reflected that Debtor's counsel had filed Schedule B which actually listed the Refund, Debtor's counsel acknowledged that he must have known about the Refund at the time of the Debtor's bankruptcy filing.

The Debtor thereafter credibly testified that his counsel never told him that he needed to disclose receipt of the Refund or that he was not supposed to spend the Refund. He also testified that he thought he had properly disclosed the Loans because he told the Trustee about the Loans

4

during the Meeting. During trial, it was clear that the Debtor relied solely upon the advice of legal counsel to fill out his Schedules and that his counsel failed to tell him that he was required to turn over the Refund to the Trustee and that he was not permitted to spend the Refund.

### III. DISCUSSION

At trial, Hampton only pursued her § 727(a)(2)(B) claim against the Debtor under Count I.[2] *See* Plaintiff's Pretrial Statement. Specifically, Hampton argued that the Court should deny the Debtor's discharge under § 727(a)(2)(B) because the Debtor acted with intent to defraud a creditor or an officer of the estate when he: (a) made the Transfers; and (b) concealed receipt of the Refund by failing to disclose it.

Hampton also limited her § 727(a)(4) claim against the Debtor under Count II to §727(a)(4)(A).[3] *See* Plaintiff's Pretrial Statement. Essentially, Hampton argued that the Court should deny the Debtor's discharge under § 727(a)(4)(A) because the Debtor knowingly and fraudulently made false statements under oath when he failed to disclose the Refund, the Loans, the Accounts and the Transfers on his Schedules and to the Trustee during the Meeting.

Because Hampton has failed to demonstrate that the Debtor knew that any of his statements were false and that the Debtor had the requisite fraudulent intent under either § 727(a)(2)(B) or §727(a)(4)(A), the Court will enter judgment in favor of the Debtor on both Counts I and II.

### a. Count I: 11 U.S.C. § 727(a)(2)(B)

Section 727(a)(2)(B) provides that "the Court shall grant the debtor a discharge unless the debtor, with intent to…defraud a creditor or an officer of the estate…has…transferred …or

---

[2] Count I of the Complaint also included claims against the Debtor under § 727(a)(2)(A) related to Debtor's alleged failure to disclose prepetition assets and prepetition transfers of real property. However, Hampton's Pre-Trial Statement only referenced her § 727(a)(2)(B) claim and, at trial, Hampton elected not to pursue her claims against the Debtor related to the real property.

[3] Count II of the Complaint also included claims against the Debtor under § 727(a)(4)(D) but Hampton's Pre-Trial Statement only referenced § 727(a)(4)(A).

5

concealed…property of the estate, after the date of filing the petition." The party objecting to discharge bears the burden of establishing the following four elements by a preponderance of evidence: that (1) the debtor committed an act after the date of filing the petition; (2) the debtor committed the act with the intent to defraud a creditor or officer responsible for administration of the estate; (3) the act was one of the debtor or the debtor's authorized agent; and (4) the act consisted of transferring, removing, destroying, or concealing any of the debtor's property. *See Rosen v. Bezner*, 996 F.2d 1527, 1531 (3rd Cir. 1993); *In re Singh*, 433 B.R. 139, 160 (Bankr. E.D. Pa. 2010). The denial of a debtor's discharge is an "extreme step and should not be taken lightly." *Rosen*, 996 F. 2d at 1531. As a result, courts shall construe the discharge provision liberally in favor of debtors. *Id.*

In order to establish the intent required under 11 U.S.C. § 727(a)(2), the plaintiff must show that the debtor had an actual, specific intent to defraud, hinder, or delay. *Rosen*, 996 F.2d at 1531; *In re Burke*, 523 B.R. 765, 769 (Bankr. E.D. Pa. 2015). Courts may base a finding of intent to defraud on circumstantial evidence and inferences drawn from the debtor's course of conduct. *In re Burke,* 523 B.R. at 769.

As discussed above, Hampton argues that the Debtor's discharge should be denied because the Debtor acted with intent to defraud a creditor or an officer of the estate when he: (a) made the Transfers; and (b) concealed receipt of the Refund by failing to disclose it.

With regard to the Transfers, Hampton has established parts (1), (3) and (4) of the test because the Debtor made the Transfers after he filed for bankruptcy and such Transfers constituted transfers of the Debtor's property. *See* Ex. 9. However, Hampton has failed to demonstrate part (2), which requires at least circumstantial evidence that the Debtor made the Transfers with the intent to defraud a creditor or an officer of the estate. *See Rosen,* 996 F.2d at

6

1533; *In re Burke*, 523 B.R. at 769. Based upon the Debtor's credible and consistent testimony at both the Meeting and at trial (which was corroborated by his attorney), the Court finds that, until the Meeting, the Debtor was never told by his counsel that, upon receipt, the Refund would actually constitute property of the estate, should immediately be turned over to the Trustee and should not be spent by the Debtor. *See* Ex. 7A at 30:00, 8A at 3:00; Ans. ¶ 24. As a result, the Debtor had no idea that he was not supposed to make the Transfers. *See* Ans. ¶ 24. The fact that the Debtor fully disclosed that he was entitled to receive the Refund on Schedule B, did not attempt to conceal receipt of the Refund or the Transfers during the Meeting, and immediately handed over all of the relevant bank records in connection with the Transfers to the Trustee further reinforces the Court's finding that the Debtor had no idea that he was not supposed to make the Transfers. *See* Ex. P-4, 7A at 13:00, 9. Accordingly, given the Debtor's ignorance, as well as the Debtor's reliance on his counsel's advice (or lack thereof), with regard to not spending the Refund, the Debtor necessarily lacked the requisite intent to defraud under §727(a)(2)(B) with regard to the Transfers. *See Rosen,* 996 F.2d at 1533-34; *In re Singh*, 433 B.R. at 154, 160 (actions based on confusion, ignorance, or mistake do not establish intent to defraud); *In re Kyte*, 174 F. 867, 868 (M.D. Pa. 1909) (intent to defraud cannot be inferred from actions taken in reliance on advice from counsel.).

Based upon the Court's finding above that the Debtor did not realize that the Refund was part of his bankruptcy estate until the Meeting, Hampton likewise has failed to establish part (2) of the test with regard to the Debtor's alleged concealment of the Refund. In addition, it is not clear that Hampton can demonstrate that the Debtor concealed the Refund by failing to disclose it. First, the Debtor did not conceal the Refund on his Schedules because, at the time that he filed his Schedules, he had not yet received the Refund. *See* Ex. P-9. Moreover, the Debtor's

entitlement to receive the Refund was properly listed on Schedule B. Ex. P-4. In addition, when the Debtor was asked about the Refund at the Meeting, he did not conceal receipt of the Refund; rather, he immediately admitted to receiving it. Ex. P-7A at 13:00.

Although Hampton did not make this argument, the only action that the Debtor should have taken (had he properly been advised by his counsel) was to amend his Schedules to reflect receipt of the Refund.[4] Here again, in light of his counsel's failure to advise him to do so, had the argument been advanced, it would not have bolstered Hampton's assertion that the Debtor had the requisite intent to conceal or defraud. The Court therefor concludes that Hampton has failed to demonstrate that the Debtor should be denied a discharge under § 727(a)(2)(B) as a result of the Debtor's actions (or inactions) related to the Refund.

Based upon the foregoing, there is no basis to deny the Debtor a discharge under §727(a)(2)(B).

### b. Count II: 11 U.S.C. § 727(a)(4)(A)

Section 727(a)(4)(A) provides that the "court shall grant the debtor a discharge unless...the debtor knowingly or fraudulently, in or in connection with the case, made a false oath or account." The party objecting to discharge under this provision bears the burden of establishing by a preponderance of the evidence that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *In re Spitko*, 357 B.R. 272, 312 (Bankr. E.D. Pa. 2006). False statements or omissions in the

---

[4] It is also not clear whether the Debtor's actions constitute concealment under the law, which is defined as preventing the discovery of, fraudulently transferring, or withholding knowledge or information required by law to be made known. *In re Henderson,* 134 B.R. 147, 157 (Bankr. E.D. Pa. 1991). Here, the Debtor took no affirmative action to prevent discovery of the Refund or to "withhold" information; rather, he was completely ignorant about his obligations to disclose receipt of the Refund and unhesitatingly complied with all questions and requests related to the Refund. *See* Ex. P-7A, 9.

debtor's schedules, as well as false statements by the debtor during examinations, can constitute false oaths. *Id.* Such examinations include the Section 341 meeting of creditors. *JRC Lumber Corp.*, 2010 WL 1382122, at *7 (D. N.J. April 5, 2010); *In re Zimmerman*, 320 B.R. 800, 807 (Bankr. M.D. Pa. 2005). A statement or omission relates materially to a bankruptcy case when the subject "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or existence and disposition of property." *In re Singh*, 433 B.R. at 154.

Hampton alleges that Debtor knowingly and fraudulently made false oaths by failing to disclose receipt of the Refund, the Accounts, the Transfers and the Loans. However, as discussed above, at the time that the Debtor filed his Schedules, he could not have disclosed receipt of the Refund, the Accounts or the Transfers, since the Debtor had not yet received the Refund, opened the Accounts or made the Transfers. *See* Ex. P-9. Technically, the Debtor initially testified incorrectly at the Meeting that his Schedules did not contain any errors or omissions, and that he had listed all of his assets and creditors on his Schedules, because the Debtor should have amended his Schedules by the time of the Meeting to reflect receipt of the Refund and the creation of the Accounts in which the Refund was deposited.[5] However, it is clear to the Court, based upon the Debtor's testimony during the Meeting and at trial that, at the time that the Debtor initially responded to the Trustee's general questions during the Meeting, the Debtor had no idea that he was supposed to amend his Schedules to disclose receipt of the Refund and the Accounts. *See* Ex. P-7A at 30:00. Therefore, the Debtor did not know that, by failing to amend his Schedules to reflect these assets, his initial statements at the Meeting were false.

---

[5] The Debtor was never required to amend his Schedules or SOFA to reflect the post-petition Transfers because, although improper, the Debtor was only required to list prepetition transactions on his Schedules and SOFA.

For the same reasons, the Debtor also lacked the requisite fraudulent intent when he made the initial statements at the Meeting with regard to receipt of the Refund and the Accounts. Hampton failed to adduce any evidence, circumstantial or otherwise, which demonstrated that the Debtor intended to deceive anyone. In fact, the Debtor immediately disclosed receipt of the Refund and the Accounts as soon as he was directly asked a question about them during the Meeting. Ex. P-7A at 13:00.

Hampton's last argument relates to the Debtor's failure to list the Loans on his Schedules, as well as Debtor's failure to identify the Loans in response to the Trustee's initial questions during the Meeting. The Debtor was required to list all of his prepetition obligations on his Schedules, and his failure to include the Loans on Schedule F renders his Schedules false. *See* Ex. P-4. Likewise, his initial testimony in connection with the Trustee's general questions at the outset of the Meeting was false in connection with the Loans, because they should have been included in his Schedules. *See* Ex. P-7A at 1:30. In addition, both of the Debtor's false statements relate materially to the bankruptcy case because they involve the disposition of estate property to the Debtor's creditors. *See In re Singh*, 433 B.R. at 154.

However, based upon the Debtor's testimony at the Meeting and at trial, the Court finds that the Debtor did not realize that his Schedules and his initial testimony at the Meeting were false. During the Meeting and at trial, the Debtor appeared confused when he was asked why he did not list the Loans on his Schedules and did not appear to understand that White and Major were prepetition creditors who should have been listed on Schedule F. *See* Ex. 7A at 30:00-31:00. Instead, he repeatedly responded that White and Major were not creditors based upon his understanding that he already had paid off the Loans when he made the Transfers. In addition, at trial, the Debtor testified that, prior to the Meeting, his attorney had never asked him if he had

any other debts, and he did not realize that he was supposed to list his friends' Loans on his Schedules.

Generally, the Debtor struggled to understand and answer questions throughout both the Meeting and trial. In addition, during the Meeting, the Debtor disclosed the Loans in a forthcoming manner and never attempted to hide the fact that he paid off the Loans postpetition. Ex. P-7A at 18:00.

Based upon the foregoing, the Court finds that the Debtor's counsel failed to ensure that his elderly client understood what was required to be included in the Schedules and, as a result, the Debtor unwittingly omitted the Loans from the Schedules and failed to disclose them in response to the Trustee's initial questions during the Meeting. The Court concludes that the Debtor did not realize that his statements (or omissions) were false.

In addition, the Court finds that the Debtor lacked the requisite fraudulent intent when he omitted the Loans on his Schedules and failed to properly respond to the Trustee's initial questions. To make a false oath "fraudulently" requires an intent to deceive. *In re Singh*, 433 B.R. at 154. Circumstantial evidence or a pattern of nondisclosure or concealment may demonstrate fraudulent intent. *Id.* To show that a debtor made a false statement "knowingly," the plaintiff must prove that the debtor knew the truth, yet "willfully and intentionally" swore to a false statement. *Id.* In other words, the debtor had to (1) know the statement was false; (2) make the statement without belief in its truth; or (3) make the statement with reckless disregard for its truth. *In re Spitko,* 357 B.R. at 313.

Courts have further identified several factors as significant in finding that a debtor acted with reckless disregard for the truth, and thus "knowingly." *JRC Lumber Corp.,* 2010 WL 1382122, at *9. These factors include: (1) the fact that events for which the petition questions

11

elicited information took place prior to the petition date; (2) the omission of numerous assets from a debtor's petition; (3) the existence of "wild disparities" between the petition and the debtor's testimony at the 341 meeting; and (4) the debtor's failure to explain the omissions. *Id.*

As discussed above, the Court has already determined that the Debtor did not realize that his statements were false and that he did not make the statements without believing in their truth. Rather, the Debtor made genuine mistakes based upon his counsel's failure to properly advise him in preparing the Schedules. Courts have held that relying upon the advice of counsel weighs against finding intent to deceive and can provide an excuse for a false oath. *In re Georges*, 138 Fed. Appx. 471, 472 (3d Cir. 2005); *In re Topper*, 229 F.2d 691, 693 (3d Cir. 1956). In addition, honest mistakes due to ignorance, confusion, or inadvertence will not establish that a debtor knowingly or fraudulently made a false oath. *In re Brown*, 108 F.3d 1290, 1294-95 (10th Cir. 1997); *In re Singh*, 433 B.R. at 159 (no fraudulent intent or knowing intent to deceive under §727(a)(4)(A) where omission of asset on schedules was due to debtor's confusion about what was required, lack of education, and overall ignorance); *In re Spitko*, 357 B.R. at 312.

In addition, the circumstances do not demonstrate that Debtor recklessly disregarded the truth in making the false statements. First, the Debtor did not omit numerous assets or creditors on his Schedules- the Loans at issue were the only obligations that the Debtor failed to disclose, and the Schedules were otherwise correct. *See JRC Lumber Corp.*, 2010 WL 1382122 at *9; Ex. P-4.[6] Second, there were no "wild disparities" between the statements in the Debtor's Schedules and his testimony during the Meeting. *See id.* Rather, his omission of the Loans on Schedule F and his initial testimony during the Meeting demonstrated the Debtor's lack of understanding

---

[6] In *JRC Lumber Corp.*, the debtor had omitted at least ten assets and liabilities on the schedules, including multiple properties and sources of revenue. *JRC Lumber Corp.*, 2010 WL 1382122 at *3-6. The sheer number of omissions there established a series or pattern of extreme carelessness, differing significantly from the oversight of not listing the Loans here. *Id.* at *10.

that the Loans were supposed to be listed on Schedule F. In addition, his later testimony during the Meeting and at trial about why he failed to list the Loans on Schedule F were entirely consistent with his prior statements.[7]

Finally, as discussed above, the Debtor provided a reasonable explanation for omitting the Loans from his Schedules- namely, that he did not realize that he was required to list the Loans on his Schedules because his attorney failed to ask him about whether he owed any prepetition obligations other than Hampton's judgment. The Court finds that the Debtor credibly explained at trial why the Loans were omitted. Therefore, the Court concludes that the Debtor did not act in reckless disregard of the truth. Hampton accordingly has failed to establish the requisite intent required under § 727(a)(4).

## IV.    CONCLUSION

Hampton's claim against the Debtor will be discharged because (1) Hampton has failed to demonstrate that the Debtor intended to defraud the creditor or administrators of the bankruptcy estate under 11 U.S.C. § 727(a)(2)(B) by not disclosing the Transfers or receipt of the Refund on his Schedules, and (2) Hampton has failed to demonstrate that Debtor did not disclose receipt of the Refund, the Accounts, the Transfers or the Loans knowingly and fraudulently with the intent to deceive under 11 U.S.C. § 727(a)(4). Judgment therefore will be entered in favor of the Debtor and against Hampton in this adversary proceeding.

Date: November 20, 2017

_____
Honorable Ashely M. Chan
United States Bankruptcy Judge

---

[7] In *JRC Lumber Corp.*, several disparities existed not only between the schedules and the testimony provided at the section 341 meeting of creditors, but also in certifications that debtor later filed, making it much more difficult to determine the debtor's state of mind than in this case. *JRC Lumber Corp.*, 2010 WL 1382122 at *10.